**EXHIBIT B**

# GENERAL AGREEMENT FOR CONTRACTED WORK

THIS AGREEMENT, made and entered into this 10th day of May, 2012, by and between PLANT RECOVERY COMPANY/PRC ENVIRONMENTAL, INC. (the "Company"), and Malin International Ship Repair & Drydock, Inc. (the "Contractor") whose principle place of business is in Galveston, Texas. The Company and Contractor may be referred to herein collectively as the "Parties."

WITNESSETH: THAT

WHEREAS, the Company is the owner and operator of the MODU PROSPECTOR, IMO 8753213;

WHEREAS, the Company proposes to have Contractor perform the Work described herein and in various Contractor's Proposals (the "Proposal" or "Proposals") and in drawings and specifications provided by Company (hereinafter referred to as the "Work").

WHEREAS, the Company desires to engage the Contractor to perform the Work in accordance with this Agreement.

WHEREAS, the Contractor desires to perform the Work in accordance with this Agreement.

NOW THEREFORE, for other good and valuable considerations and the mutual benefits which will accrue to the Parties, the Parties agree as follows:

**PURPOSE.** The purpose of this Agreement is to set forth the obligations, responsibilities, terms and conditions applicable to the Parties for performing the Work.

**THE WORK.** The Contractor shall perform all of the Work for the Company as set out and described in Contractor's Proposal(s), and in the drawings and specifications provided to the Contractor by the Company pursuant to LOC Marine & Engineering Consultants' Warranty Surveyor Specifications. Such Proposal(s), drawings and specifications are made a part of this Agreement as if attached hereto. The Contractor shall do everything required by this Agreement and shall execute the Work in a workmanlike manner in accordance with the terms of this Agreement and to the reasonable satisfaction of the Company.

The Work will include dockage of the PROSPECTOR at the Contractor's facility at Pier 41, Port of Galveston. Company will be solely responsible for the adequacy and cost of the movement to, and mooring of the PROSPECTOR at, Pier 41, and will defend, indemnify, and hold Contractor harmless from any costs or liabilities associated with these or related activities, even in the event of participation by Contractor and even in the case of negligence of Contractor or other legal liability of Contractor, with like exception of the liability and indemnity obligations assumed by Contractor under Paragraph 10.1 herein below.

Contractor will provide labor to consist of a minimum of ten workers plus supervisors to be employed at least 12 hours per day, six days per week while the PROSPECTOR is alongside



Pier 41 until such time as the Work is completed. Company will appoint a Project Superintendent who will have the authority to order and approve all activities of Contractor's labor, timesheets, and material requisitions. The Project Superintendent, or his designee, will be on site throughout the Project. Following the completion of the Work, Contractor's workers shall be reduced in order to maintain 2 contract workers onboard the rig for ongoing move preparations and sundry repair items in anticipation of the rig's final disposition. The remaining Contractor's workers shall work as directed by Company in order to ensure the rig's condition and continued mobility and stability, and Company shall identify to Contractor tasks to be accomplished by Contractor consistent with the rig's anticipated conversion pursuant to current rig conversion plans.

Any cranes, or similar large equipment, which are used in connection with the Work are subject to the approval of Contractor and the Port of Galveston. To the extent the Company is responsible for supplying cranes or similar equipment to the jobsite, it must provide complete information pertaining to footprints, ground loads and similar information as may be reasonably requested.

The Work will be designed so as to not interfere with Contractor's other activities in the area of the jobsite. Company will comply with Contractor's reasonable requests in this regard.

Company is responsible for the preparation of, implementation of, and compliance with a written safety program and associated policies, applicable to its employees and the employees of its other contractors/subcontractors. Company's employees and its contractors/subcontractors will also comply with Contractor's Safety, Environmental, Health and Security System in connection with the performance of the Work.

Company acknowledges that its employees and the employees of its other contractors are subject to MTSA security requirements to include requirements applicable to TWIC cards and escorts necessary to gain access to the jobsite.

In connection with the Work, Company will provide prior to commencement thereof: (a) copies of Company's HSE plan, (b) the power requirements for the Work, (c) contact information for its managers/supervisors, (d) a Site Plan showing major equipment locations and lay down areas, (e) schedules pertaining to deliveries and removals of supplies and materials, (f) lists of manpower and equipment requirements, and (g) a schedule for tasks to be completed constituting the Work.

Contractor represents that it is knowledgeable in the areas and requirements described in this Agreement and its Proposal(s), and that its personnel are experienced and knowledgeable regarding the same.

**COMPLETION TIME.** The Work to be executed hereunder shall be commenced as set out in the Proposal(s) and shall be completed as set out therein, or within any extended time required by the circumstances.



2

AGREEMENT PRICE:

The Company shall pay the Contractor as full compensation for the performance of this Agreement (subject only to such increase or decrease as is provided for herein) the amounts set forth herein and in the Proposal(s). Company shall pay as a dockage fee $1,670.00 to Contractor for each day, or part thereof, that the PROSPECTOR is alongside Contractor's facility at Pier 41, Port of Galveston. Company will pay for labor provided by or through Contractor for the performance of the Work. Company will pay for materials provided by or through Contractor in the performance of the Work. Company will pay Contractor for supplies used in connection with the performance of the Work. The amounts to be paid for labor, materials, and supplies is to be set forth in the Proposal(s) to be provided by Contractor. Costs & material mark-ups as shown in contractors current rate sheet.

**PAYMENTS.** The Company shall make progress payments in accordance with the schedule set forth in the Proposal(s). Prior to commencement of the Work, Company shall pay Contractor $150,300.00 representing the first 90 days of dockage charges as referenced above. Prior to commencement of the Work, Company shall pay Contractor $_____ representing an advance deposit for the labor and materials cost for the first two weeks of the Project. Otherwise, payments are due and payable by Contractor within 7 days after presentation of Contractor's invoices. Presentation of invoices may be made either by delivery to Company's person-in-charge at the worksite or by mailing same to Company at the address set forth herein below.

**CHANGE ORDERS.** The Company may revise the specifications and/or detail drawings at any time during the performance of the Work. In the event of such revision, the Contractor shall provide to the Company an estimate for the change in price, together with an estimate of any additional time that may be required for completion of the Work. Upon agreement between the Contractor and the Company as to the amount of any such increase or decrease in the Agreement price and/or any additional time required for completion of this Agreement, the Company shall give the Contractor a signed memorandum directing such changes as he may desire and specifying the resulting increase or decrease in the Agreement price and/or the change in the time required for completion, fixed as aforesaid.

**LIENS.** Contractor shall have a lien for the Work and any product created by the Work until such time as Contractor receives the final payment for the Work. .

**INSURANCE.** The Parties at their sole cost and expense, shall maintain in effect, and shall cause their subcontractors and any other agents of the Parties performing work to maintain in effect, at their sole cost and expense, at all times during the performance of the Project, the insurance coverages described below, with minimum limits not less than those set forth below, with insurers and under forms of policies satisfactory to the other Party. The insurance provisions of this Agreement are intended to be a separate and distinct obligation of the Parties. Therefore, these provisions shall continue to be enforceable irrespective of other provisions of this Agreement.

A. Workers' Compensation Insurance; Employer's Liability Insurance. The Parties shall maintain, and shall require each of their subcontractors or agents performing work on the

3



Project to maintain, Workers' Compensation Insurance (including coverage for Occupational Disease) in accordance with all applicable laws and regulations for all of their (and all of their subcontractors' and agents') employees. If any of the work on the Project involves exposure of injury to the Parties' employees or any of their subcontractors' or agents' employees under the U.S. Longshore and Harbor Worker's Compensation Act, the Jones Act or under laws, regulations or statutes applicable to maritime employees, the Parties shall maintain (and shall cause each of their subcontractors or agents performing such work to maintain) coverage for such injuries or claims. The Parties shall maintain (and shall cause each of their subcontractors or agents performing work on the Project, to maintain) Employer's Liability insurance of not less than $1,000,000 for each accident.

    B.     General Liability Insurance. The Parties shall maintain, and shall require each of their subcontractors or agents performing work on the Project to maintain, General Liability Insurance covering all operations relating to the Project for the limits of liability indicated below and including coverage for:

    (i)     Premises and Operations;

    (ii)     Products and Completed Operations;

    (iii)     Broad form of Property Damage (including Completed Operations);

    (iv)     Bodily Injury Liability;

    (v)     Explosion, Collapse and Underground Hazards;

    (vi)     Personal Injury Liability; and

    (vii)     Protection and Indemnity.

The General Liability Insurance shall be the Occurrence Coverage Form. The Parties shall maintain General Liability Insurance with no general annual aggregate limit and combined single limits of liability for bodily injury, property damage and personal injury, with a limit of not less than $5,000,000 each occurrence, plus a separate $5,000,000 annual aggregate for Products-Completed Operations.

The required limits may be met by a combination of primary policy and an excess or umbrella policy

Each policy of Company or any endorsement thereto, except those for worker's compensation, hull and machinery, and employer's liability, shall name the Contractor as additional insured, as to all applicable coverages with respect to the Work, always subject to the terms of the applicable policies.



4

All of the Company's policies must contain an endorsement to the effect that the issuer waives any claim or right in the nature of subrogation to recover against the Contractor with respect to activities conducted relating to the Work.

Each policy of the Parties, on which each Party is to be named an additional insured, must contain an endorsement that such policy is primary insurance to any other insurance or self insurance available to the other Party, but only to the extent of the liabilities assumed hereunder by such Parties, with respect to claims arising in connection with the Work.

The issuer of each policy shall be licensed or eligible to do business in the state of Texas, or be placed with Lloyds Underwriters or another financially sound insurance carrier agreeable to each Party.

Each Party shall assume and bear any claims or losses to the extent of deductible amounts or self-insured retentions and waives any claim it may ever have for the same against the other Party in respect of any covered event, but only to the extent of the liabilities assumed hereunder by such Party.

C. Automobile Liability Insurance. The Parties shall maintain, and shall require each of their subcontractors or agents performing work on the Project to maintain, Automobile Liability insurance including coverage for all owned, hired, leased and non-owned automobiles. The Automobile Liability insurance shall include coverage for Automobile Contractual Coverage. The combined single limit for bodily injury and property damage liability shall be not less than $2,000,000 for any one accident or loss. The required limits may be satisfied by a combination of a primary policy and an excess or umbrella policy

D. Special Services.

(1) Watercraft. Because the Work involves watercraft (including the PROSPECTOR) owned or operated by Company, including and its other contractors or agents, the Company, , shall maintain watercraft coverage with a combined single limit for bodily injury and property damage liability of not less than $10,000,000 each occurrence.

(2) Professional Liability Insurance. If the Work or the Project involves design work or other professional services, then the Parties shall maintain (and any subcontractor performing Work hereunder shall maintain), at the other Party's sole and absolute discretion, a Professional Liability Insurance policy with minimum limits of $1,000,000.

E. Each party shall procure and maintain, and shall require its other contractors and agents to procure and maintain, Contractual Liability insurance covering the obligations assumed by each party in this Agreement; also, Company shall procure and maintain Hull and Machinery coverage for the PROSPECTOR.

F. The requirements contained herein as to types and limits of insurance coverage to be maintained are not intended to and shall not in any manner limit or qualify the liabilities and obligations assumed by the Parties under this Agreement. The Parties shall permit any

5



authorized representative of the other Party to examine the original insurance policies and/or certificates of financial responsibility, should it so request. Should a Party at any time neglect or refuse to provide the insurance required herein, or should such insurance be canceled, any other rights or remedies which it may have under the circumstances, the other Party shall have the right to purchase such insurance and the cost thereof shall be added to or subtracted from monies due. Failure to provide insurance in accordance with this clause shall constitute a material breach of this Agreement.

**CONTRACTOR RESPONSIBLE FOR WORK UNTIL ACCEPTED.** The Contractor agrees that it will carry on said Work until the same is fully completed and accepted by Company.

### ARTICLE 10. LIABILITY & INDEMNITY OBLIGATIONS

10.1 <u>Liability for Contractor's Personnel</u>. Contractor releases Company from any liability to Contractor for, and Contractor shall defend, indemnify and hold Company harmless from and against, all suits, actions, claims and demands, by whomever brought, based on personal injury or death of the employees of Contractor or Contractor's subcontractors, whenever occurring, suffered or incurred, arising from or related in any way to performance of the Work hereunder, regardless of how such personal injury or death is caused and even if caused by the negligence, whether sole or concurrent or active or passive or other legal fault, including strict liability, of Company.

10.2 <u>Liability for Contractor's Property</u>. Contractor releases Company from any liability to Contractor for, and Contractor shall defend, indemnify and hold Company harmless from and against, all suits, actions, claims and demands, by whomever brought, based on damage or loss to the property of Contractor, whenever occurring, suffered or incurred arising from or related in any way to performance of the Work hereunder, regardless of how such damage or loss is caused and even if caused by the negligence, whether sole or concurrent or active or passive or other legal fault, including strict liability, of Company.

10.3 <u>Liability for Company's Personnel</u>. Company releases Contractor from any liability to Company for, and Company shall defend, indemnify and hold Contractor harmless from and against, all suits, actions, claims and demands, by whomever brought, based on personal injury or death of the employees of Company or Company's other contractors, whenever occurring, suffered or incurred arising from or related in any way to performance of the Work hereunder, regardless of how such personal injury or death is caused and even if caused by the negligence, whether sole or concurrent or active or passive or other legal fault, including strict liability, of Contractor.

10.4 <u>Liability for Company's Property</u>. Company releases Contractor from any liability to Company for, and Company shall defend, indemnify and hold Contractor harmless from and against, all suits, actions, claims and demands, by whomever brought based on damage or loss of Company's property (including the MODU VIKING PROSPECTOR), whenever occurring, suffered or incurred by Company arising from or



related in any way to performance of the Work hereunder, regardless of how such damage or loss is caused and even if caused by the negligence, whether sole or concurrent or active or passive or other legal fault, including strict liability, of Contractor.

10.5 Liability for Third Party Personnel. Contractor shall defend, indemnify and hold Company harmless from and against all suits, actions, claims and demands based on personal injury or death suffered or incurred by third parties (persons other than those referred to in Paragraphs 10.1 and 10.3 above) to the extent that such personal injury or death is caused by the negligence of Contractor in the performance of the Work hereunder. Company shall indemnify and hold Contractor harmless from and against all suits, actions, claims and demands based on personal injury or death suffered or incurred by third parties (persons other than those referred to in Paragraphs 10.1 and 10.3 above) to the extent that such personal injury or death is caused by the negligence of Company.

10.6 Liability for Third Party Property. Contractor shall defend, indemnify and hold Company harmless from and against all suits, actions, claims and demands based on property damage or loss suffered or incurred by third parties (persons other than those referred to in Paragraphs 10.2 or 10.4 above) to the extent that such damage or loss is caused by the negligence of Contractor in the performance of the Work hereunder. Company shall defend, indemnify and hold Contractor harmless from and against all suits, actions, claims and demands based on property damage or loss suffered or incurred by third parties ( persons other than those referred to in Paragraphs 10.2 and 10.4 above) to the extent that such damage or loss is caused by the negligence of Company.

**EMPLOYEES.** The Contractor shall employ competent, experienced, qualified and capable workers and personnel, who shall be under the exclusive care, custody and control of Contractor.

**WARRANTY.** Contractor warrants to the Company that all materials and equipment furnished under this Agreement will be new unless otherwise specified in writing. Contractor further warrants for a period of six (6) months from the date of Company's acceptance of the Work, that the Work will be of good quality, free from faults and defects in workmanship, materials and manufacture and in conformance with any drawings and specifications provided to Contractor by Company. In the event of such a fault or defect being discovered within six (6) months of the date of acceptance, the Contractor shall upon receipt of written notice by the Company, repair and make good, without cost to the Company, any defects or faults resulting from imperfect or defective Work done or materials furnished by the Contractor, except that if any repairs must be made outside of a fifty (50) mile radius from Galveston, Texas, Company shall pay transportation costs and per diem for all Contractor personnel and equipment required to remedy any defects or faults. The above warranties shall be the sole and exclusive warranties given by Contractor. Contractor specifically disclaims all other express and implied warranties, including, but not limited to, the implied warranties of merchantability, fitness for a particular purpose and non-infringement.

**NO CONSEQUENTIAL DAMAGES.** Neither Party shall be liable to the other for any indirect, incidental, special, consequential, punitive or exemplary damages including, but not



limited to, damages for loss of profits, good will, use contracts or other intangible losses of whatever nature.

**INDEPENDENT CONTRACTOR.** It is mutually understood and agreed between the Parties that the Contractor in doing the Work under the provisions of this Agreement shall act as an independent contractor and not as a subcontractor, agent, or employee of the Company, and shall maintain complete control and responsibility for its own employees and operations and those of its subcontractors, if any. This Agreement shall not establish a partnership or joint venture between the parties. No agency or implied authority is created by this Agreement, and neither Party shall have the authority to enter into any obligation or create any liability on behalf of the other Party.

**ALTERATIONS AND AMENDMENTS.** No alteration or amendment of this Agreement shall be valid unless the same is made in accordance with the provisions of this Agreement or by an instrument in writing signed by the Company and by the Contractor; and, in case of any such alteration or amendment, so much of this Agreement as is not necessarily thereby changed shall remain in force, and no act or conduct of either party shall be held to operate as a waiver of any provision or provisions of this Agreement, unless in the form of a writing signed by the party against which it is asserted.

**ABANDONMENT OF PROJECT.** In the event the Project or Work is abandoned by Company, Company shall pay Contractor for all Work performed to date in accordance with each Proposal without further liability on the part of the Company. Company shall be solely responsible for removing the PROSPECTOR from alongside Contractor's dock upon completion or abandonment of the Project or upon demand by Contractor, and shall indemnify and hold Contractor harmless from any expenses or costs incurred by Contractor as a result of Company's failure to remove.

**CONFIDENTIAL INFORMATION.** In the course of performance of services by Contractor for Company, it is inevitable that certain confidential information will be revealed to Contractor by Company or that Contractor will obtain knowledge of such confidential information through other sources. Contractor agrees to maintain such confidential information except when such confidential information is made known publicly or by a third party authorized to release such confidential information. Contractor shall not release any information pertaining to this Agreement or use the name of the Company on any public releases without the prior written consent of the Company.

**STANDARDS; COMPLIANCE WITH LAWS.** Company and Contractor agree to fully comply with all rules and regulations of every governmental agency having jurisdiction over the Work covered herein, and shall comply with all applicable federal, state and local laws and ordinances applicable to the Work, and shall obtain, at its own cost and expense, all licenses and permits identified in any Proposal and all other licenses and permits or other government approvals necessary for the Work. Each party agrees to indemnify the other from its failure to comply with the provisions of this Section, including but not limited to fines, penalties, forfeitures, and attorney' fees and costs.

8



**PATENTS.** Company warrants that the Work performed hereunder does not infringe on any patents or copyrights issued by the United States or any foreign governments. Company covenants and agrees to defend, hold harmless and protect the Contractor from and against any and all damages, claims and demands based upon an alleged infringement of such patent or copyright by reason of the Company's sale or use of the Work performed hereunder and to defend the Contractor at the Company's expense in any suits at law or in equity arising therefrom to which the Contractor may be made a party.

**FORCE MAJEURE.** Except as otherwise expressly provided herein, neither party shall be liable for any delay due to causes not reasonably within the affected party's control, including but not limited to, acts of civil or military authority, including courts and regulatory agencies, acts of God, war, riot or insurrection, inability to obtain required construction permits, blockades, embargoes, sabotages, epidemics, fires, floods, strikes, lockouts or other labor difficulties, provided such labor difficulties do no arise from inequitable labor practices. Failure of subcontractors or inability to obtain materials shall not be considered as a force majeure delay

In the event of any delay resulting from such causes, upon notice to the other party within five (5) days of the occurrence or event giving rise to the delay, the time for performance hereunder shall be extended for a period of time reasonably necessary to overcome the effects of such delays. This shall constitute the sole remedy to either party in the event of such delays. The party experiencing the delay shall undertake all diligent efforts to make up for the time lost through delay and no additional compensation shall be payable as a result of such Force Majeure delay.

**JURISDICTION AND VENUE.** This Agreement memorializing the total agreements of the parties hereto, and all respective rights and obligations of the parties hereto, shall be governed by the laws of the State of Texas. Any litigation arising hereunder or related hereto shall be resolved by the District Courts for the State of Texas, County of Galveston or the Federal Court of the United States (Southern District of Texas) where the principal office of the Contractor is located.

**CONSCIENCE OF AGREEMENT.** This Agreement represents the entire Agreement between the parties and supersedes all prior representations or agreements, whether written oral, with respect to Work hereunder. This Agreement has been negotiated at arm's length as between the Parties and shall not be construed as against either Party in its capacity as drafter of the Agreement.

**SEVERABILITY, SAVINGS.** In the event that any provision of this Agreement shall be held unconscionable, unenforceable, or void for any reason by any tribunal of competent jurisdiction, it is agreed that the portion of the provision in question shall be modified only to the extent necessary to eliminate the portion held unconscionable, unenforceable or void by the tribunal and such modified portion, together with all other parts of the provision in question, shall then be binding on the parties hereto. The remaining provisions of this Agreement shall not be affected by the action of any tribunal or modification of such provision, and shall remain in full force and effect.



**PARTIES BOUND.** This Agreement shall be binding upon the Parties hereto and their respective successors, heirs, personal representatives and permitted assigns.

**WAIVER.** Failure of either party to enforce at any time, or for any period of time, one or more of the terms or conditions of this Agreement shall not be a waiver of such term or condition or of such party's rights thereafter to enforce each and every term and condition of this Agreement.

**SURVIVAL.** All covenants, representations, warranties, guarantees, indemnifications, hold harmless agreements, and remedy provisions contained in this Agreement shall survive the termination of this Agreement.

**ATTORNEY'S FEES.** In the event that it is necessary to take legal action relating to this Agreement, the Work or the Project in the courts of the United States or of any of the several states (including appellate proceedings) the prevailing party shall be entitled to attorneys' fees and costs from the losing party as determined by the court or agreed to by the parties.

**NOTICES.** Any notice, communication, or statement required or permitted to be given shall be in writing and shall be deemed to have been sufficiently given when delivered in person or by registered mail, postage prepaid, to the address of the respective party below:

If to Company: Christopher Siebert
Plant Recovery Company/PRC Environmental, Inc.
1149 Ellsworth
Suite 135
Pasadena, Texas 77506

If to Contractor: Jon Calder
Malin International Ship Repair & Drydock, Inc.
320 77th Street
Galveston, TX 77554

The parties hereto have executed this Agreement as of the day and year first above written.

CONTRACTOR: COMPANY

MALIN INTERNATIONAL SHIP PRC ENVIRONMENTAL, INC.
REPAIR & DRYDOCK, INC.

By: /s/ Jon Calder  By: /s/ Christopher Siebert
Title: Vice President & General Manager  Title: President

Date: May 10, 2012  Date: May 10, 2012

Terms for berthing and work on rig PROSPECTOR at Malin Ship Repair Pier 41 in Galveston

April 24, 2012

For: Plant Recovery Corporation, Rig PROSPECTOR & owners

1. **Estimated time at berth: 90 days.** Cost per day: $1,670. Per day.
   a. Total estimated cost for berthing: $150,300.

2. **Mooring arrangement & location:** At "T-Head" of Pier 41. Customer responsible for adequacy and cost of mooring. Malin accepts no liability or responsibility for safe mooring, whether Malin assists, provides equipment or labor.

3. **Malin work force and participation:** Malin will do all necessary repairs as required by class, owners, underwriters, flag state administration or others while at Malin shipyard (Pier 41).

   It is expected that Malin will have approximately (no less than) ten men employed, plus supervision while the rig is at Pier 41 for twelve hour days.

   Owner will appoint a "Project Superintendent" who has binding authority to order and approve work, sign timesheets and order materials. Owners Project Superintendent will be on site every day during the job. An alternate may be appointed.

4. **Invoicing and payment:** PRC will deposit with Malin adequate funding for entire estimated dockage ($150,300) and a progress payment against labor prior to the rig arriving at Pier 41.

   The labor progress payment will be for estimated two weeks cost in advance for labor and anticipated material & subcontractors.

5. **Cranes:** Any cranes (or other large equipment) mobilized and set up for use at Pier 41 must have prior approval by Malin and by the Port of Galveston. Crane (equipment) footprint and ground load(s) must be provided before permission can be given.

6. **Disclosure:** Malin is very concerned about the possibility that the rig (project) may be abandoned, leaving Malin with an un-useable large floating object for disposal. PRC will have to

make known adequate plans, funding, principals involved and etc. to ensure acceptable "comfort level" to Malin.

7. **Contract:** Malin will require a contract to be in place before accepting the PROSPECTOR at pier 41.
    a. Malin will require copies of hull & machinery and P&I insurance policies (certificates) for PROSPECTOR;
    b. Financial Responsibility for Pollution Insurance for PROSPECTOR (certificate).

8. **Subcontractors, third parties and safety program:**

    a. Malin (Pier 41) is a working shipyard with other customers and their vessels coming and going and various projects underway at any given time. PROSPECTOR and PRC must not impede other customers work;
    b. Malin (Pier 41) has a mature Safety, Environmental, Health and Security system (HSES) that includes all subcontractors and third parties. PRC and PROSPECTOR must comply at all times with Malin's HSES requirements.
    c. All local, national and State rules and requirements must be complied with.
    d. All subcontractors and third parties must provide Malin with certificates of insurance and have a subcontractor agreement in place before entering pier 41.
    e. Pier 41 is within the Port of Galveston and therefore is subject to the MTSA security requirements. No personnel will be allowed into Pier 41 without TWIC cards and/or PRC provided escorts. The Port of Galveston will strictly enforce this.

9. **Work Plan:** PRC must provide Malin with a detailed work plan showing:
    a. What work (all) is to take place and when during the project it is anticipated each task will be performed;
    b. Manpower and equipment requirements;
    c. Site plan showing major equipment locations, lay down area, frequency of material addition or removal (particularly any scrap removed from the rig);
    d. Power requirements (if any);
    e. PRC's HSE plan and personnel;
    f. Contact information for all PRC supervision and management concerned with the project.