IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

MALIN INTERNATIONAL SHIP     §
REPAIR & DRYDOCK, INC.     §
    §    CIVIL ACTION NO. G-13-039
v.     §
MODU PROSPECTOR, its apparel,     §
equipment, engines, freights, tackle, etc.,     §
*in rem* and     §
PLANT RECOVERY COMPANY/ PRC     §
ENVIRONMENTAL, INC.     §

## REPORT AND RECOMMENDATION

Before the Court, by referral from the Honorable Gregg Costa, United States Circuit Judge (sitting by designation), is the "Motion for Partial Summary Judgment and to Reclaim Property" of Intervenor, Maxim Crane Works, LP (Maxim), and the "Cross-Motion for Partial Summary Judgment" of Plaintiff, Malin International Ship Repair & Drydock, Inc. (Malin). The Motions have been fully briefed and argued, therefore, the Court now issues this Report and Recommendation.

The District Court is so familiar with the history of the various lawsuits dealing with the semi-submersible drilling rig involved in this case that this Court can forego any background facts unless necessary to the disposition of the instant Motions. The issue before the Court at this time is the current ownership of two mobile "crawler" cranes, valued at approximately $450,000.00, that were owned by Maxim when it leased them to PRC Environmental (PRC) for use in the planned conversion of the Rig into a floatel. The cranes

were being used on the deck of the Rig; they were necessary because the Rig's stationary pedestal cranes had been removed.  Malin utilized the cranes in its conversion-related work, but PRC paid the rental payments to Maxim until Malin bought the Rig at the US Marshal's sale after it was arrested for non-payment of, *inter alia*, Malin's wharfage invoices. Following the sale, an employee of Malin asked Maxim to retrieve the cranes, but Malin later claimed the cranes were "appurtenances" of the Rig at the time it was purchased and, therefore, that they are now Malin's property.  Maxim, of course, disagrees and wants the Court to declare it to be the owner of the cranes.

In the opinion of this Court, this dispute turns on whether the Rig was "in navigation" when Malin acquired its ownership interest.  This Court does not believe it was; if not, the Rig no longer qualified as a vessel.  Malin's work was to prepare the Rig for a tow to Brownsville for the final conversion work which required it to be drydocked.  While there is some authority to support Malin's position that a vessel is in navigation if towable, see, Colonna's Shipyard v. U.S.A.F. General Hoyt S. Vandenberg, 584 F.Supp. 2d 862 (E.D. Va. 2008), this Court finds the contrary authority more persuasive.  For example, in Robert E. Blake, Inc. v. Excel Environmental, 104 F.3d 1158, 1160 (9th Cir. 1997), it was held that the condition of the vessel at the time of a repair and reactivation contract was controlling and the mere existence of the contract was not sufficient to reestablish the vessel's status.  This reasoning seems more in line with older Fifth Circuit cases.  In Wagner v. Fish Meal Co., 548 F.2d 1193 (5th Cir. 1977), the Court held that the determination of whether a vessel is

in navigation must focus on the status of the vessel, the pattern of repairs and the extensive nature of the work to be done; the Court quoted West v. United States, 361 U.S. 118, 122 (1959).  Then, in Wixom v. Boland Marine & Manufacturing, Co., Inc., 614 F.2d 956, 957 (5th Cir. 1980), the Court looked to the extensive nature of the repairs and who controlled them and found that major structural changes to a vessel at substantial expense, performed by a non-owner, rendered the vessel not "in navigation" as a matter of law.  In this case, Malin concedes that the planned conversion work was major structural work.  The work was never completed and the Rig, therefore, was not a vessel "in navigation" at the time of Malin's purchase.  Consequently, Malin cannot claim a maritime claim on the cranes.

Malin argues that the cranes were essential to the Rig's navigation, operation or mission because they were needed to secure the lines during the Brownsville tow.[1]  But even if the Rig were considered to have been returned to navigation following Malin's preparatory work, by the time Malin acquired its ownership, the Rig was no longer in navigation because Malin, by then, had, admittedly, decided to scrap it which clearly withdrew it from navigation and ended its vessel status.  As a result, the Rig was no longer intended to operate and it had no mission.  Consequently, in the opinion of this Court, once the decision was made to scrap and destroy the Rig any "appurtenance" liens on the cranes were extinguished. Cf.  PNC Bank Deleware v. F/V MISS LAURA, 381 F.3d 183, 186 (3d Cir. 2004)    In the

---

[1]    Malin has offered no evidence that the cranes were intended to accompany the rig on the Brownsville tow, and the ease with which equipment can be removed from a vessel can be relevant to whether it is essential to the vessel's operations.  Kesselring v. F/T ARCTIC HERO, 301 F.3d 1123, 1126 (9th Cir. 1994)

MISS LAURA the Third Circuit held that the "appurtenance" lien on the vessel's fishing license was extinguished at the time the vessel sank and that the permitee's use of the license on a replacement vessel was free from any lingering maritime lien.  It seems to follow that the destruction of the Rig would, likewise, extinguish Malin's appurtenance lien claim to the cranes.

For the foregoing reasons it is the **RECOMMENDATION** of this Court that the "Motion for Partial Summary Judgment" (Instrument no. 94) of Intervenor, Maxim Crane Works, be **GRANTED**; that Maxim be declared the owner of the cranes and entitled to their possession; and that the "Cross-Motion for Partial Summary Judgment" (Instrument no. 96) of Plaintiff, Malin International Ship Repair and Drydock, Inc., be **DENIED**.

The Clerk **SHALL** send a copy of this Report and Recommendation to the Parties who **SHALL** have until **Friday, March 27, 2015**, to have written objections, filed pursuant to 28 U.S.C. §636(b)(1)(C), **physically on file** in the Office of the Clerk.  The Objections **SHALL** be electronically filed and/or mailed to the Clerk's Office at P.O. Drawer 2300, Galveston, Texas 77553.  Failure to file written objections within the prescribed time **SHALL** bar any Party from attacking on appeal the factual findings and legal conclusions accepted by the District Judge, except upon grounds of plain error.

**DONE** at Galveston, Texas, this _____13th_____ day of March, 2015.

_____
John R. Froeschner
United States Magistrate Judge

4